

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

FILED

AUG 0 1 2007

DAVID CREWS, CLERK
BY_____
Deputy

Claiborne Leon Collier, Sr., Mary Conner,                         **PLAINTIFFS**
Margie L. Gilbert, Estate of L. G. Green, by
Personal Representative of the Estate, Stella Hampton,
Charlie L. Harris, Hattie Holman,
Alfred A. Kemp, Jr., Evelyn Koch,
Rosie L. Lance, Estate of William Latham,
Estate of Willie Jean Latham, Bessie Love,
Alberta Martin, Samuel McIntee, Auburn Medders,
Paul Minchew and Annie Perry

VS.                                              CAUSE NO.: 4:07CV124-M-B

Pfizer Inc., Monsanto Company, G. D. Searle LLC,                   **DEFENDANTS**
Pharmacia Corporation,

---

## COMPLAINT

---

### TRIAL BY JURY IS REQUESTED

### INTRODUCTION

1. This is a civil action brought by the above Plaintiffs, for injuries resulting in heart

attacks, strokes and/or blood clots. Plaintiffs were prescribed and used the prescription

medication CELEBREX (Celecoxib). This action seeks monetary damages for personal injuries

caused by the drugs named herein and ingested by Plaintiffs.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1332 because the parties are citizens of different states and the amount in controversy

exceeds $75,000.00.

3. This Court has supplemental jurisdiction over the remaining common law and state

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 2 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 2 of 44    Page 2 of 44

claims pursuant to 28 U.S.C. § 1367.

4.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred, in part, in the Northern District of Mississippi.

## PARTIES

5. Plaintiff, Claiborne Leon Collier, Sr., was an adult resident citizen of Panola, County, Mississippi.

6. Plaintiff, Mary Conner, is an adult resident citizen of Coahoma, County. Mississippi.

7. Plaintiff, Margie L. Gilbert, is an adult resident citizen of Bolivar, County, Mississippi.

8. Plaintiff, Estate of L. G. Green, was an adult resident citizen of Bolivar, County, Mississippi.

9. Plaintiff, Charlie L. Harris, is an adult resident citizen of Leflore, County, Mississippi.

10. Plaintiff, Hattie Holman, is an adult resident of Carroll, County, Mississippi.

11. Plaintiff, Alfred A. Kemp, Jr., is an adult resident citizen of Bolivar, County, Mississippi.

12. Plaintiff, Estate of William Latham, was an adult resident citizen of Bolivar, County, Mississippi.

13. Plaintiff, Estate of Willie Jean Latham, was an adult resident citizen of Bolivar, County, Mississippi.

14. Plaintiff, Alberta Martin, is an adult resident citizen of Sunflower, County, Mississippi.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 3 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 3 of 44

15.  Plaintiff, Samuel McIntee, is an adult resident citizen of Sunflower, County, Mississippi.

16.  Plaintiff, Paul Minchew, is an adult resident citizen of Tallahatchie, County, Mississippi.

17.  Plaintiff, Annie Perry, is an adult resident citizen of Bolivar, County, Mississippi.

18.  Defendant G. D. Searle LLC. (hereinafter "Searle") is a subsidiary of Pharmacia Corporation, and is upon information, knowledge and belief an Illinois Corporation. As such, Defendant Searle can be served through its principal address: CT Corporation System, 208 South LaSalle Street, Suite 814 Chicago, Illinois 60604. At all times relevant hereto, Searle as a subsidiary of Pharmacia Corporation and Pharmacia Corporation (hereinafter "Pharmacia"); at all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).

19.  Defendant Pharmacia Corporation is a Delaware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent: CT Corporation System, 645 Lakeland East Drive Flowood, Mississippi 39232.

20. Defendant Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Monsanto is licensed and registered to do business in Mississippi, and may be served through its agent: Corporation Service Company, 506 South President Street Jackson, Mississippi 39201.

21.  Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 4 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 4 of 44

pharmaceutical product Celebrex (Celecoxib). Defendant Pfizer is licensed and registered to do

business in Illinois and may be served through its registered agent: CT Corporation System, 645

Lakeland East Drive Flowood, Mississippi 39232.

## JOINDER ALLEGATIONS

22. Plaintiffs' claims are typical of each other's claim, Plaintiffs purchased Celebrex for

musculoskeletal joint pain associated with osteoarthritis, among other maladies.

23. There are questions of law and fact common to the Plaintiffs which include, but are

not limited to:

a. Whether Defendants exercised reasonable care in the design, testing, inspection,

manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising,

promotion, sale, packaging, supply and/or distribution of Celebrex (Celecoxib).

b. Whether Defendants breached that duty and were negligent in the design, testing,

inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing,

advertising, promotion, sale, packaging, supply and/or distribution of Celebrex (Celecoxib) in

that: Celebrex (Celecoxib) was defective when put on the market by Defendants; that with such

defect, Celebrex (Celecoxib) was reasonably certain to be dangerous when put to normal use;

and that Defendants failed to use reasonable care in designing or making Celebrex (Celecoxib) or

in inspecting it for defects. Specifically, Defendants breached their duty by, among other things:

i. Failing to include adequate warnings that would alert the medical,

pharmaceutical and/or scientific communities, and users and/or consumers of the drug,

including Plaintiffs, to the potential risks and serious side effects of the drug;

ii. Failing to adequately and properly test and inspect the drug before placing the

drug on the market;

iii. Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death.

iv. Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke, life threatening allergic and/or skin reactions and/or death;

v. Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

vi. Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

vii. Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiffs, in order to make a profit from sales;

viii. Whether Defendants knew or should have known that Celebrex (Celecoxib) caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiffs, were not aware. Defendants nevertheless

advertised, promoted, marketed, sold, distributed and/or supplied Celebrex (Celecoxib)

knowing that there were safer methods for pain relief.

24. These common issues of law and fact predominate over individual issues pertaining

to individual Plaintiffs and permissive joinder is a superior method of resolving those

claims.

## BACKGROUND

25. Celebrex is a pharmaceutical treatment for musculoskeletal joint pain associated with

osteoarthritis, among other maladies. The Removing Defendants Searle, Pharmacia, Monsanto

and Pfizer did manufacture, design, package, market and distribute this drug. The Sales

Representatives Defendants encouraged the use of this drug in improper customers,

misrepresented the safety and effectiveness of this drug and concealed or understated its

dangerous side effects. These Defendants aggressively marketed this drug directly to the

consuming public, although only available through prescription, through the use of various

marketing mediums, including, but not limited to, print and television advertisements. These

Defendants did this to increase sales and profits.

26. At all times relevant hereto, the Defendants actually knew of the defective nature of

their product as herein set forth, yet continued to design, manufacture, market, distribute and sell

their product so as to maximize sales and profits at the expense of the general public's health and

safety in conscious disregard of the foreseeable harm caused by this product. Defendants'

conduct exhibits such an entire want of care as to establish that their actions were a result of

fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiffs'

individual rights, and hence punitive damages are appropriate.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 7 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 7 of 44

27.  This Complaint seeks redress for damages sustained by Plainiffs use of Celebrex (Celecoxib), manufactured and sold by Pharmacia, G.D. Searle, Monsanto and Pfizer, the Defendants herein.

28. The Plaintiff, Clairborne Collier was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Clairborne Collier had no history of heart of stroke problems. Subsequent to the Plaintiff Clairborne Collier's ingestion of Celebrex he suffered a heart attack, stroke, and blood clot. The Plaintiff, Mary Conner was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Mary Conner had no history of heart of stroke problems. Subsequent to the Plaintiff Mary Conner's ingestion of Celebrex she suffered a stroke. The Plaintiff, Margie Gilbert was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Margie Gilbert had no history of heart of stroke problems. Subsequent to the Plaintiff Margie Gilbert's ingestion of Celebrex she suffered a heart attack. The Plaintiff, Estate of L. G. Green was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Estate of L. G. Green had no history of heart of stroke problems. Subsequent to the Plaintiff Estate of L. G. Green's ingestion of Celebrex he suffered a heart attack.  The Plaintiff, Charlie L. Harris was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Charlie L. Harris had no history of heart of stroke problems. Subsequent to the Plaintiff Charlie L. Harris' ingestion of Celebrex he suffered a heart related injury.  The Plaintiff, Hattie Holman was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Hattie Holman had no history of heart of stroke problems. Subsequent to the Plaintiff Hattie Homan's ingestion of Celebrex she suffered a heart related injury.  The Plaintiff, Alfred A. Kemp was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Alfred A. Kemp had no history of heart of stroke problems. Subsequent to the Plaintiff Alfred A. Kemp's ingestion of Celebrex he suffered a heart related injury. The Plaintiff, Estate of

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 8 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 8 of 44  Page 8 of 44

William Latham was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Estate of William Latham had no history of heart of stroke problems. Subsequent to the Plaintiff Estate of William Latham's ingestion of Celebrex he suffered from heart failure. The Plaintiff, Estate of Willie Jean Latham was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Estate of Willie Jean Latham had no history of heart of stroke problems. Subsequent to the Plaintiff Estate of Willie Jean Latham's ingestion of Celebrex she suffered from heart failure. The Plaintiff, Alberta Martin was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Alberta Martin had no history of heart of stroke problems. Subsequent to the Plaintiff Alberta Martin's ingestion of Celebrex she suffered a heart related injury. The Plaintiff, Samuel McIntee was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Samuel McIntee had no history of heart of stroke problems. Subsequent to the Plaintiff Samuel McIntee's ingestion of Celebrex he suffered a heart related injury. The Plaintiff, Paul Minchew was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Paul Minchew had no history of heart of stroke problems. Subsequent to the Plaintiff Paul Minchew's ingestion of Celebrex he suffered a stroke. The Plaintiff, Estate of Bobbie J. Overton was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Estate of Bobbie J. Overton had no history of heart of stroke problems. Subsequent to the Plaintiff Estate of Bobbie J. Overton's ingestion of Celebrex she suffered a heart attack. The Plaintiff, Annie Perry was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Annie Perry had no history of heart of stroke problems. Subsequent to the Plaintiff Annie Perry's ingestion of Celebrex she suffered a heart attack. The Plaintiff, Robert Rawls was prescribed Celebrex. Prior to the ingestion of Celebrex the Plaintiff Robert Rawls had no history of heart of stroke problems. Subsequent to the Plaintiff Robert Rawls' ingestion of Celebrex he suffered a heart related injury.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB     Document 1     Filed 01/11/2008     Page 9 of 44
Case 4:07-cv-00124-MPM-EMB     Document 1     Filed 08/01/2007     Page 9 of 44

30. The damages sought herein are the direct and proximate result of Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Celebrex (Clecoxib).

31. At all times relevant hereto, Defendants were engaged m the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Celebrex (Celecoxib) throughout the United States.

32. Had Defendant properly disclosed the risks associated with using Celebrex (Celecoxib), the Plaintiffs would not have taken it for treatment of pain associated with injury.

33. This action is being brought in the Circuit Court of Tunica County, because the amount of recovery sought exceeds the jurisdictional levels of all lower courts.

### A. Facts Regarding CELEBREX: Science And Other Cox-2 Inhibitors

34. CELEBREX is among a class of pain medications called non-steroidal anti-inflammatory drugs ("NSAIDs"). Aspirin, naproxen (trade name Aleve®), and ibuprofen (trade name Advil®) are examples of well-known NSAIDs.

35. NSAIDs reduce pain and inflammation by blocking the body's production of pain transmission enzymes called cyclooxygenase, COX-1 and COX-2. COX enzymes trigger the sequential oxidation of various fatty acids to create prostaglandins. Prostaglandins are important cogs in the physiology of pain, igniting hormone-like actions in the immediate vicinity of the cells that release them, thereby inducing inflammation, pain, and fever.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 10 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 10 of 44

36. Because COX enzymes and prostaglandins increase the pain associated with tissue injury, the synthesis of prostaglandins by cells of injured tissue becomes a reasonable target for pain-management drugs.

37. Traditional NSAIDs like aspirin, ibuprofen and naproxen inhibit both COX-1 and COX-2 enzymes simultaneously, providing relief from inflammation and pain, but at the cost of potential adverse gastrointestinal effects, as the prostaglandins that are supported by COX-1 enzymes are involved in the production of gastric mucus which protects the stomach wall from the hydrochloric acid present in the stomach. By blocking the COX-1 enzyme, the body's ability to protect gastric tissue is hampered and, as a result, can cause harmful gastrointestinal side effects, including stomach ulceration and bleeding.

38. Defendants and other pharmaceutical companies set out to remedy these gastrointestinal side effects suffered by some NSAID users by developing "selective" inhibitors, called coxibs, which targeted only COX-2 production, thus (allegedly) allowing for proper maintenance of gastric tissue while still reducing inflammation. Their development was based on the hypothesis that COX-2 was the source of prostaglandins E2 and I2, which mediate inflammation, and that COX-1 was the source of the same prostaglandins in the stomach lining. By not inhibiting COX-1, whose products provide cytoprotection in the gastric epithelium, these coxibs were thought to decrease the incidence of gastric side effects when compared to traditional NSAIDS that inhibit both COX-1 and COX-2.

39. In making this decision, however, Defendants and their predecessors in interest either intentionally ignored and/or recklessly disregarded current medical knowledge that selective COX-2 inhibition lowers prostaglandin I2 levels, the predominant COX-2 product responsible for preventing platelet aggregation and clotting, while leaving thromboxane A2, the potent COX-

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 11 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 11 of 44   Page 11 of 44

1 platelet aggregator and vasoconstrictor, unaffected. By selectively inhibiting prostaglandin I2 without similarly suppressing its COX-1 counterpart, CELEBREX and other coxibs expose their users to a host of clot-related cardiovascular risks, including heart attack, stroke, and unstable angina.

40. On June 29, 1998, SEARLE and PFIZER filed for FDA approval of Celecoxib, its first major COX-2 inhibitor drug, under the trade name CELEBREX. The FDA granted preliminary approval of the new drug on December 31, 1998 for the relief of signs and symptoms of adult osteoarthritis and rheumatoid arthritis. A year later, on December 23, 1999, the FDA granted accelerated approval of CELEBREX for a second indication; the reduction of intestinal polyps as an adjunct to endoscopy and surgery in patients with familial adenomatous polyposis (FAP), a rare genetic disorder.

41. In late January 1999, following FDA approval, PFIZER publicly launched CELEBREX, their new "blockbuster" drug, in one of the largest direct-to-consumer marketing campaigns ever undertaken for prescription drugs. PFIZER's massive marketing campaign fraudulently and misleadingly depicted CELEBREX as a much safer and more effective pain reliever than less inexpensive traditional NSAIDs. Defendants and their representatives and agents misrepresented the safety profile of CELEBREX to consumers, the medical community, healthcare providers, and third party payors.

**B. Facts Regarding Celebrex's Safety And Defendants' Knowledge Thereof**

42. The potential for cardiovascular risk of selective COX-2 inhibitors was known to Defendants long before the FDA granted market approval in December 1998. By 1997, and prior to the submission of the New Drug Application (the "NDA") for CELEBREX, Defendants were aware that, by selectively inhibiting only the COX-2 enzyme, CELEBREX altered the

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 12 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 12 of 44

homeostatic balance between prostacylcin synthesis and thromboxane and thereby increased the prothrombotic effects of the drugs, causing blood clots to form in those who ingested it. *See* Topol, E.J., *et al., "Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors,"* JAMA, August 22, 2001 at 954.

35. Pharmacologist Dr. Garrett Fitzgerald of the University of Pennsylvania reported in an editorial published in *The New England Journal of Medicine* on October 21, 2004, that contemporaneous with Defendants' launch it was known that selective COX-2 inhibitors, such as CELEBREX, suppressed the formation· of prostaglandin 1-2 in healthy volunteers, inhibited platelet aggregation in vitro, and may predispose patients to myocardial infarction or thrombotic stroke. Fitzgerald, G.A., Patrono C., *"The Coxibs, Selective Inhibitors of Cyclooxygenase-2,"* N Engl J Med 2001;345:433-442.

36. Early FDA updates in March and April of 1999 similarly acknowledged this known risk, but noted, based upon PFIZER's representations, that CELEBREX "does not affect platelet aggregation (clumping), an important part of the blood clotting process." *See* FDA Updates, *"New Arthritis Drug May Have Fewer Side Effects,"* FDA Consumer March-April 1999.

37. Based on the studies performed on CELEBREX, other COX-2 inhibitors, and basic research on this type of selective inhibitor which had been widely conducted, Defendants knew when CELEBREX was being developed and tested that selective COX-2 inhibitors posed serious cardiovascular risks for anyone who took them, and presented a specific additional threat to anyone with existing heart disease or cardiovascular risk factors.

38. Despite years of studies on selective COX-2 inhibitors, as well as the disturbing new studies specifically analyzing the risks of CELEBREX, Defendants failed to take any action to protect the health and welfare of patients, opting instead to continue promoting the drug for sale even

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 13 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 13 of 43 of 44

after the FDA's Drug Safety and Risk Management Advisory Committee and Arthritis Drug

Advisory Committee meetings.

### C. CELEBREX and Cox-2Studies Did Not Show CELEBREX to be Safe

### 1. CELEBREX Long-Term Arthritis Safety Study (CLASS)

39. In September 1998, PHARMACIA sponsored an allegedly independent CELEBREX

Long-Term Arthritis Safety Study ("CLASS"). The multicenter, double-blind, parallel group

study sought to compare the incidence of clinically significant upper gastrointestinal events

between CELEBREX 400 mg BID and Ibuprofen 800 mg. (CLASS data is found in NDA 20-

998/S-009 submitted to the FDA by SEARLE on June 12, 2000. CLASS was submitted to the

FDA on June 12, 2000 and reviewed by James Witter, M.D., Ph.D. (FDA Medical Officer) on

September 20, 2000.)

40. On September 13, 2000, Defendants released the results of the CLASS study in the

*Journal of American Medicine.* Silverstein, F.E., *et al., "Gastrointestinal Toxicity with Celecoxib

vs. Nonsteroidal Anti-inflammatory Drugs for Osteoarthritis and Rheumatoid Arthritis: The

CLASS Study: A Randomized Controlled Trial,"* 284 *JAMA* 1247 (2000). Researchers

enthusiastically reported a "lower incidence of symptomatic ulcers and ulcer complications

combined, as well as other clinically supported toxic effects, compared with NSAIDs at standard

doses."

41. Although Defendants touted the CLASS study as the primary evidence to support its

theory that CELEBREX was safer for consumers who could not tolerate traditional NSAIDs in

their gastrointestinal system, Defendants intentionally, recklessly and/or negligently concealed,

suppressed, omitted, and misrepresented the results, risks and defects of the CLASS study.

Among other things, Defendants failed to release the study's complete twelve month results

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 14 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 14 of 44

releasing only the first six months of trials, reported biased and misleading results, limited

conclusions to upper gastrointestinal events despite other known risks factors, and understated

known cardiovascular risks.

42. Despite Defendants' favorable CLASS Study conclusions, no other reviewing or

administrative body was able to substantiate those findings. The FDA Medical Officer Review of

the CLASS data found CELEBREX to be no more efficacious than other traditional NSAIDS

comparators. *See generally,* FDA Medical Officer Review, NDA 20-998/S-009 submitted to the

FDA by SEARLE on June 12, 2000. According to the FDA's review of the CLASS data:

"Celecoxib did not demonstrate any statistical superiority to NSAIDs (pooled) or either

comparator (diclofenac and ibuprofen) with regards to the primary safety endpoint of CSUGIE

(Clinically Significant Upper Gastrointestinal Adverse Events) at any point in the trial although

there were trends that favored celecoxib." (FDA CLASS Review).

43. The FDA Arthritis Advisory Committee similarly found no "clinically meaningful"

safety advantage of CELEBREX over older NSAIDs (FDA CDER Arthritis Advisory

Committee, February 7th and 8th, 2001, Gaithersburg, Maryland). The CLASS Study failed to

demonstrate a superior safety record over ibuprofen or pooled NSAID data. Based on this

information, the Committee advised that further studies be done to assess the risk of COX-2

drugs and NSAIDS when taken with aspirin.

44. In a June 2002 editorial, the *British Medical Journal* chastised the Study's

"misleading" and "seriously biased" nature; noting that the complete results "clearly

contradict[ed] the published conclusions," and warning against the dangers of "overoptimistic,"

"short-term" data and "post hoc changes to the protocol." Juni, Peter, *et. at., "Are Selective COX*

*2 Inhibitors Superior To Traditional Non Steroidal Anti-Inflammatory Drugs?"* BMJ

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 15 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 15 of 44
Page 15 of 44

2002;324:1287-1288. Most noticeably, the CLASS study considered only six months of data despite the fact that researchers at that point had 12 months of data that, when analyzed as a whole, showed no significant difference. Instead of releasing the complete 12-month results from CLASS, PFIZER relied on and published only the first six months of data. JAMA 2000, 48:1455-1460. The results of the completed study revealed the real truth: CELEBREX offered no gastrointestinal (GI) benefit. Almost all ulcer-related complications that had occurred during the second half of the CLASS trials were in users of CELEBEX. These results clearly contradict the published CLASS conclusions.

45. Editors of the Journal of the American Medical Association (JAMA) and other medical experts were reportedly. "flabbergasted" when they realized they had been "duped" by only being provided with the first six months of CLASS data. Okie S., *"Missing data on Celebrex: Full study altered picture of drug,"* Washington Post 2001 Aug 5;Sect A:II. The *Washington Post* reported JAMA editors noting: "When all of the data were considered, most of CELEBREX's apparent [GI] safety advantage disappeared."

46. Institutional bias also appeared to playa role in the Study's biased conclusions. According to the *Washington Post,* all sixteen CLASS authors were either employees of PHARMACIA or paid consultants of the company. Okie, S., *"Missing data on Celebrex: Full study altered picture of drug,"* Washington Post 2001 Aug 5;Sect A:ll. Moreover, at least one author, Dr. M. Michael Wolfe, a gastroenterologist from Boston University, admits he was duped by PHARMACIA. In the summer of 2000, *The Journal of the American Medical Association* asked Wolfe to participate in the "six-month" trial. Wolfe found the study, tracking 8,000 patients over a six-month period, persuasive, and penned a favorable review, which helped to drive up CELEBREX sales. It was not until early the next year, while serving on the FDA's

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 16 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 16 of 46 of 44

Arthritis Advisory Committee, that Wolfe learned the study had run for one year, not six months, as the company had originally led both Wolfe and the *Journal* to believe. *Id* Here again, when the complete data was considered, most of CELEBREX advantages disappeared.

47. Defendants also limited conclusions of the CLASS study to upper gastrointestinal events, despite other known risks factors, and understated known cardiovascular risks. A metastudy by the Cleveland Clinic published in the Journal of the American Medical Association analyzed data from two major studies, including CLASS, funded by the drug companies and two smaller ones-all for cardiovascular risks. Debabrata Mukherjee, *et al., "Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors,"* 286 JAMA 954 (2001).) The metastudy found that PHARMACIA failed to identify and study cardiovascular risks for their products. The annualized heart attack rates for patients taking Vioxx or Celebrex, the researchers found, were "significantly higher" than those in a group taking placebos. "The available data raise a cautionary flag about the risk of cardiovascular events with Cox-2 inhibitors," they concluded.

48. "A total of 36 deaths occurred during the [CLASS] study or during post study follow-up: 19 in the celecoxib group, 9 in the diclofenac group and 8 in the ibuprofen group .... Most deaths were cardiovascular in nature." FDA CLASS Review at 54. The increased number of adverse cardiovascular events in the CELEBREX group was not surprising, as they were also revealed in the original New Drug Application (NDA) submitted for CELEBREX. "In the original NDA, myocardial infarction was noted to occur at a higher rate in celecoxib-treated as compared to placebo treated patients. In the long term trial (Trial 024) that was included in the NDA submission, the predominate (>90%) cause of death for patients taking celecoxib at any dose was cardiovascular." FDA CLASS Review at 78.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 17 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 17 of Page 17 of 44

49. Public Citizen, a public watchdog organization, also reviewed the CLASS data in its entirety. A complete review reveals the combined anginal adverse events were 1.4% in the CELEBREX group versus 1.0% in either NSAID group. Specifically, the rate of heart attack in the CELEBREX was double that of the other two NSAIDs, 0.2% vs. 0.1%, respectively.

50. Eric Topol of the Clevant Clinic reached a similar conclusion, noting that the CLASS trail MI rate was 1.6% in CELEBREX group (at a dosage of 400 mg twice a day) and 1.2% in the ibuprofen group for the 1739 patients taking low-dose aspirin. Topol noted that this numerical excess, albeit not statistically signification, was also found in the 6229 patients not taking aspirin in the trial. Eric 1. Topol, *"Arthritis Medicines and Cardiovascular Events House of Coxibs,"* JAMA 293:366. Based on this data, Topol and his colleagues concluded: "It is mandatory to conduct a trial specifically assessing cardiovascular morbidity." *Id.* Unfortunately, no such trials were ever initiated, delaying the official warnings of CELEBREX and jeopardizing countless lives in the process.

51. The CLASS data proves that PFIZER knew that its first generation COX-2 inhibitor, CELEBREX, caused a disproportionately and statistically significant high number of adverse cardiovascular events before it was introduced to the market in January 1999. According to Public Citizen, after CLASS, the FDA recommended a trial to specifically assess the cardiovascular risks of COX-2 inhibitors. The Adenoma Prevention with Celecoxib (APC) trial was intended to be this placebo-controlled trial of CELEBREX.

## 2. APC Trial

52. In early 2000, the National Cancer Institute (NCI), in collaboration with SEARLE and PFIZER, initiated the Adenoma Prevention with Celecoxib (APC) trial, a randomized, double-blind, placebo-controlled study to discover the efficacy of CELEBREX in preventing the

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 18 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 18 of 44

growth of pre-cancerous colon polyps. N.ENG.J. MED.352;11 at 1072. The trial involved 2026 patients across the country with randomization to one of three groups: (1) placebo; (2) 200 mg CELEBREX twice daily; and (3) 400 mg CELEBREX twice daily. The patients, each of whom had an adenomatous polyp removed before enrollment, were followed up for a mean of 33 months while taking the study drug, with the primary objective of limiting the development of colorectal cancer.

53. On December 17, 2004, the National Cancer Institute suspended the use of CELEBREX for all participants in the APC trial due to "significant excess of cardiovascular death, myocardial infarction (MI) and stroke." Eric J. Topol, *"Arthritis Medicines and Cardiovascular Events - House of Coxibs,"* JAMA 293:366. Analysis by an independent Data Safety Monitoring Board (DSMB) showed a two to three fold increased risk of major fatal and non-fatal cardiovascular events for participants taking the drug compared to those on a placebo with a secondary dose-response effect.

54. The absolute excess of major cardiovascular events of 13/1000 patients at the 800 mg dose (400 mg 2x day) was strikingly similar to the results of trials with rofecoxib and valdecoxib, both selective NSAID COX-2 inhibitors removed for the market for their significant cardiovascular risks. Eric J. Topol, *"Arthritis Medicines and Cardiovascular Events - House of Coxibs,"* JAMA 293:366.

55. The FDA reported similar results, noting:

In the National Cancer Institute's Adenoma Prevention with Celecoxib(APC) trial in patients at risk for recurrent colon polyps, a 2-3 fold increased risk of serious adverse CV events was seen for CELEBREX compared to placebo after a mean duration of treatment of 33 months. There appeared to be a dose response relationship, with a hazard ratio of 2.5 for CELEBREX 200 mg twice daily and 3.4 CELEBREX 400 mg twice daily for the composite endpoint of death from CV causes, myocardial infarction (MI), or stroke.

April 7, 2005 FDA Alert: www.fda.gov/cder/druglinfopage/celebrexlcelebrex-hcp.htm.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 19 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 19 of 44   Page 19 of 44

56. The dosage noted in the study is itself important for two reasons: first, there appears to be an association between dosage and the increase in adverse cardiovascular events; second, most patients increase dosage. PFIZER knew patients were increasing their dosages as noted in the CLASS Study: "Interestingly ... up to 70% of patients increased their dose for celecoxib." FDA CLASS Review at 74. Thus, PFIZER was aware of "dosage creep."

### 3. Other CELEBREX Trials

57. Several other CELEBREX trials also gave Defendants insight into the cardiovascular risks presented by CELEBREX. The Prevention of Spontaneous Adenomatous Polyps (Pre SAP) trial identified the death rate from cardiovascular causes (heart attack, stroke, heart failure, angina, or need for CV procedure) as 3.6% with CELEBREX as compared to 2.7% for placebo.

58. Public Citizen also reviewed the results of Study IQ IQ5-97-02-001 which reflected "the combined rate of all serious cardiovascular adverse events in patients getting a placebo was 2.1% but was greatly increased in those getting celecoxib to 7.7%, a 3.6 fold increase in CV risk in those people taking celecoxib. (p=0.03)." *Public Citizen,* January 26, 2005, Dr. Sidney M. Wolfe. According to Dr. Sidney Wolfe, "The study revealed a significantly increased rate (3.6-fold) of serious CV adverse events and more than a doubling in the rate of CV deaths in people using celecoxib compared to those using placebo." Id.

### 4. Cox-2Studies: VIGOR and APPROVe

59. PFIZER also had access to other data which indicated a cardiovascular risk with its drugs. Specifically, PFIZER had knowledge of two studies conducted by Merck related to its Cox-2 inhibitor Vioxx - Vioxx Gastrointestinal Outcomes Research (VIGOR) and Adenomatous Polyp Prevention (APPROVe).

### a. VIGOR

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 20 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 20 of 42

60. In 2000, The FDA Medical Officer Review of CLASS specifically noted the VIGOR trial and the concern over serious adverse cardiovascular events. FDA CLASS Review at 78.

61. According to VIGOR (near acronym for Vioxx Gastrointestinal Outcomes Research) Vioxx patients experienced 20% more serious clinical adverse events (statistically significant); they experienced 4.6 times more hypertension events serious enough to warrant discontinuation, 1.7 times more edema events, and 1.85 times as many congestive heart failure adverse events. By two measures of cardiovascular events related to blood clots, Vioxx had twice the risk of naproxen and the results were considered statistically significant.

62. The VIGOR study comprised the most definitive scientific evidence ever obtained about pharmaceutical products. It was a large, randomized clinical trial, the gold standard of medical research. It was a safety study with endpoints set in advance. As Merck stated many times, it was designed to provide definite proof of safety, convincing enough to silence the most skeptical critics. In medical terms, the VIGOR results raised the question of whether selective inhibition of COX-2 was a monumental mistake from the start. While the NSAID risks to the GI system were real and sometimes fatal, they were dwarfed by the cardiovascular risks of the arthritis population that needed these drugs on a daily basis. All makers of NSAIDs, including Defendants, were aware of these results.

### b. APPROVe

63. Anxious to put safety questions surrounding Vioxx to rest, Merck designed another large scale trial, Adenomatous Polyp Prevention (APPROVe), which was intended to test the drug's ability to prevent or shrink colon polyps, but would also compare the cardiovascular safety of Vioxx to a placebo control. According to the analysis conducted by Public Citizen of the APPROVe data: Vioxx "doubled the risk of any thrombotic cardiovascular event" and "doubled

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 21 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 21 of 44

the risk of MI (myocardial infarction a/k/a heart attack)[1]. *Public Citizen,* January 24, 2005, at 15.

Despite the available CELEBREX data and other information related to Vioxx, PFIZER never

paused to reevaluate the CELEBREX data and studies.

64. The scientific data available during and after CELEBREX's approval process made clear to

Defendants that their formulation of CELEBREX would cause a higher risk of blood clots,

stroke and/or myocardial infarctions among CELEBREX consumers, alerting them to the need to

do additional and adequate safety studies.

[1] Although Merck claims that the two-fold risk of heart attacks and strokes seen in the APPROVe trial did not emerge until after patients had been taking the drug for 18 months, closer analysis indicates that significant increase in risk of heart attack was evident in as little as 4 months time.

65. As stated by Dr. Topol on October 21, 2004, in *The New England Journal of*

*Medicine,* outlining Defendants' failure to have conducted the necessary trials before marketing to

humans "it is mandatory to conduct a trial specifically assessing cardiovascular risk and benefit

of (COX-2 inhibitors). Such a trial needed to be conducted in patients with established coronary

artery disease, who frequently have coexisting osteoarthritis requiring medication and have the

highest risk of further cardiovascular events."

66. Dr. Topol was also the author on the study published in August 2001 in JAMA (listed

above) that reported an increased risk of thrombotic cardiovascular events in persons who used

COX-2 inhibitors.

67. Based upon readily available scientific data, Defendants knew, or should have known,

that their pre-approval testing of CELEBREX did not adequately represent the cross-section of

individuals who were intended consumers and therefore, likely to take CELEBREX. Therefore,

Defendants' testing and studies were grossly inadequate.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 22 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 22 of 44
Page 22 of 44

68. Had Defendants done adequate testing prior to approval and market launch, rather than the extremely short duration studies done on the small size patient base that was actually done, the Defendants' scientific data would have revealed significant increases in incidence of strokes and myocardial infarctions among the intended and targeted population of CELEBREX consumers. Adequate testing would have shown that CELEBREX possessed serious side effects. Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

69. In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but Defendants intentionally suppressed this information in order for them to gain significant profits from continued CELEBREX sales.

70. Defendants' failure to conduct adequate testing and/or additional testing prior to market launch was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

71. At the time Defendants manufactured, advertised, and distributed CELEBREX to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase CELEBREX, but instead would purchase other cheaper and safer NSAIDs.

### D. Facts Regarding Defendants' Marketing And Sale Of CELEBREX

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 23 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 23 of 44  Page 23 of 44

72. Such an ineffective and unreasonably dangerous drug could only be widely prescribed as a result of a tremendous marketing campaign. In addition to being aggressive, the Defendants' marketing campaign was fraudulent and misleading. But for fraudulent and misleading advertising, consumers, including the Plaintiffs, would not have purchased CELEBREX, a more costly prescriptive drug, ineffective for its intended purposes.

73. Defendant's marketing was so fraudulent that the FDA issued three Warning Letters to Defendants in October 1999, April 2000, and November 2000, all finding that Defendants were unlawfully making false or misleading statements concerning the safety and/or efficacy of CELEBREX. The November letter cited two direct-to-consumer television advertisements that overstated the efficacy of CELEBREX. The FDA ordered that SEARLE immediately cease distribution of the misleading ads.

74. On February 2001, the FDA issued a Warning Letter to PHARMACIA stating that promotional activities from marketing CELEBREX were unlawful because they were "false, lacking in fair balance, or otherwise misleading." The FDA found that CELEBREX had been promoted for unapproved uses, in unapproved dosing regiments, and that the marketers had made unsupportable claims that CELEBREX was safer and more effective than other NSAIDs.

75. In August 2001, it was revealed that PHARMACIA had misrepresented the results of a post-marketing clinical study of CELEBREX when submitting it for publication. PHARMACIA selectively omitted portions of the data relating to adverse effects. The *Washington Post* reported on August 5, 2001 that, "the study had lasted a year, not six months as ... thought. Almost all of the ulcer complications that occurred during the second have of the study were in CELEBREX users. When all of the data were considered, most of CELEBREX's apparent safety advantage [as compared to traditional NSAIDs] disappeared."

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 24 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 24 of 44

76. On January 10, 2005 the FDA again issued PFIZER a written reprimand for its promotional activities. The reprimand reads: "These five promotional pieces [3 CELEBREX and 2 Bextra] variously: omit material facts ... and make misleading safety, unsubstantiated superiority, and unsubstantiated effectiveness claims." Amid continued frustration with PFIZER's continually misleading marketing strategy and ever surmounting evidence of cardiovascular dangers, the FDA Advisory Panel voted overwhelmingly that the company should never again advertise the drug [CELEBREX]."

77. At all times relevant herein, Defendants engaged in a marketing campaign with the intent that consumers would perceive CELEBREX as a safer and better drug than its other NSAIDs and, therefore, purchase CELEBREX.

78. Defendants widely and successfully marketed CELEBREX throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of CELEBREX in order to induce a widespread use and consumption. CELEBREX was represented to aid the pain and discomfort of arthritis, osteoarthritis, and related problems. Defendants made misrepresentations by means of media advertisements, and statements contained in sales literature provided to Plaintiffs' prescribing physicians.

79. Despite knowledge of the dangers presented by CELEBREX, Defendants and Defendants' predecessors in interest, through their officers, directors and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of CELEBREX and failed to warn the public, including Plaintiffs, of the serious risk of injury occasioned by the defects inherent in CELEBREX. Defendants and their officers, agents and managers intentionally proceeded with the inadequate safety testing, and then the manufacturing, sale and marketing of CELEBREX, knowing that persons would be

exposed to serious potential danger, in order to advance their own pecuniary interests.

Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety

of the public and particularly of Plaintiffs.

80. In an elaborate and sophisticated manner, Defendants aggressively marketed

CELEBREX directly to consumers and medical professionals (including physicians and leading

medical scholars) in order to leverage pressure on third party payors, medical care organizations,

and large institutional buyers *(e.g.,* hospitals) to include CELEBREX on their formularies. Faced

with the increased demand for the drug by consumers and health care professionals that resulted

from Defendants' successful advertising and marketing blitz, third party payors were compelled

to add CELEBREX to their formularies. Defendants' marketing campaign specifically targeted

third party payors, physicians, and consumers, and was designed to convince them of both the

therapeutic and economic value of CELEBREX.

81. Defendants represented that CELEBREX was similar to ibuprofen and naproxen but

was superior because it lacked any of the common gastrointestinal adverse side effects associated

with these and other non-steroidal anti-inflammatory drugs ("NSAIDS"). Defendants promoted

CELEBREX as a safe and effective alternative that would not have the same deleterious and

painful impact on the gut, but that would be just as effective, if not more so, for pain relief.

82. Yet, CELEBREX possessed dangerous and concealed or undisclosed side effects,

including the increased risk of serious cardiovascular events, such as heart attacks, unstable

angina, cardiac clotting, deep vein thrombosis, hypertension, and cerebrovascular events, such as

strokes. In addition, CELEBREX, which is significantly more expensive than traditional

NSAIDs[2], was actually was no more effective than traditional and less expensive NSAIDs and,

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 26 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 26 of 46 of 44

just like traditional NSAIDs, carried a risk of perforations, ulcers, and gastrointestinal bleeding. Yet, Defendants chose not to warn about these risks and dangers.

83. Defendants knew of these risks before the U.S. Food and Drug Administration (the "FDA") approved CELEBREX for sale, but Defendants ignored, downplayed, suppressed, omitted, and concealed these serious safety risks and denied inefficacy in its promotion, advertising, marketing, and sale of CELEBREX. Defendants' omission, suppression, and concealment of this important information enabled CELEBREX to be sold to, and purchased, or paid for by, the Consumers at a grossly inflated price.

84. Consequently, CELEBREX captured a large market share of anti-inflammatory drugs prescribed for and used by patients. In 2004 alone, sales of CELEBREX exceeded $2 billion,

[2] The cost of Celebrex is at least $3-$6 per day, while an over-the-counter NSAID can cost $.50 or less per day.
despite the significantly higher cost of CELEBREX as compared to other pain relievers in the same family of drugs.

85. Because Defendants engaged in a promotional and marketing campaign that featured an advertising blitz directly targeted to consumers, that touted CELEBREX as a safer drug than other drugs in its class, while uniformly failing to disclose the health risks of CELEBREX, Defendants were able to justify pricing CELEBREX significantly higher than the cost of generic aspirin. In reality, that price inflation was not justified. Had Defendants disclosed the truth about CELEBREX, Defendants would not and could not have reaped the billions of dollars in CELEBREX sales that were achieved as a direct result of the concealment, omission, suppression, and obfuscation of the truth.

86. The Defendants intentionally, deliberately, knowingly, and actively concealed, omitted, suppressed, and obfuscated important and material information regarding the risks, dangers, defects, and disadvantages of CELEBREX from Plaintiffs, the public, the medical community, and the regulators. This concealment and omission was deliberate, knowing, active, and uniform, was intended to induce and maximize sales and purchases of CELEBREX, and prevented Plaintiffs from obtaining all the material information that would be important to them decision as a reasonable person to purchase, pay for, and/or use CELEBREX.

87. Defendants' systematic, active, knowing, deliberate, and uniform concealment, omissions, suppression, and conduct caused Plaintiffs to purchase, pay for, and/or use CELEBREX; and caused Plaintiffs' losses and damages as asserted herein.

88. Had Defendants done adequate testing prior to approval and "market launch," the defendants' scientific data would have revealed significant increases in stroke and myocardial infarction amongst the intended population of CELEBREX consumers. Adequate testing would have shown that CELEBREX possessed serious side effects. Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

89. In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but Defendants intentionally suppressed this information in order for them to gain significant profits from continued CELEBREX sales.

90. Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch," and active concealment and failure to warn the medical community and general public of the known cardiovascular risks of CELEBREX was particularly negligent, reckless

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 28 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 28 of 48

and/or malicious given the drug's known target market. Defendants were well aware that most patients taking CELEBREX are elderly and have higher risk of developing cardiovascular risks to begin with. Nearly half of the patients with arthritis have coexisting cardiovascular disease, and most patients, as discovered in the CLASS study, were prone to higher dosing.

91. Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

92. At the time Defendants manufactured, advertising, and distributed CELEBREX to consumers including Plaintiffs, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase CELEBREX, but instead would purchase other cheaper and safer NSAID drugs.

<u>FIRST CAUSE OF ACTION</u>

<u>NEGLIGENCE</u>

93. Plaintiffs repeat and reallege each of the allegations contained in this Complaint.

94. Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Celebrex (Celecoxib).

95. At all times material hereto, Defendants had a duty to users and/or consumers of Celebrex (Celecoxib), including Plaintiffs to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Celebrex (Celecoxib).

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 29 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 29 of 42 of 44

96. Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Celebrex (Celecoxib) in that: Celebrex (Celecoxib) was defective when put on the market by Defendants; that with such defect, Celebrex (Celecoxib) was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making Celebrex (Celecoxib) or in inspecting it for defects. Specifically, Defendants breached their duty by, among other things:

a. Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, to the potential risks and serious side effects of the drug;

b. Failing to adequately and properly test and inspect the drug before placing the drug on the market;

c. Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death.

d. Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, includingPlaintiffs, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke, life threatening allergic and/or skin reactions and/or death;

e. Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 30 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 30 of 44

f. Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

g. Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, includingPlaintiffs, in order to make a profit from sales.

97. Defendants knew or should have known that Celebrex (Celecoxib) caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiffs, were not aware. Defendants nevertheless advertised, promoted, marketed, sold, distributed and/or supplied Celebrex (Celecoxib) knowing that there were safer methods for pain relief.

98. As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiffs sustained substantial injuries including, among other things, a heart attack. This injury caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiffs' ability to enjoy life. In addition, Defendants' negligence caused Plaintiffs to expend substantial sums of money for medical, hospital, and related care.

99. As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiffs was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiffs intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

100. As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiffs required reasonable and necessary health care treatment and services and had incurred

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 31 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 31 of 44

expenses therefore. Defendants' negligence was a contributing cause of Plaintiffs s injuries and Plaintiffs s economic and non economic loss. As a result of Defendant's negligence, Plaintiffs has suffered and will continue to suffer.

101. By reason of the foregoing, Plaintiffs was damaged by the negligence and wanton and willful recklessness of the Defendants. The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

SECOND CAUSE OF ACTION

STRICT PRODUCTS LIABILITY DEFECTIVE DESIGN

102. Plaintiffs repeat and reallege each of the allegations contained in this Complaint.

103. At an times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Celebrex (Celecoxib), which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

104. At all times material hereto, Celebrex (Celecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a. When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 32 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 32 of 42 of 44

consumers of the drug, including Plaintiffs, to risks which exceeded the benefits of the
drug;

    b. The drug was insufficiently tested;

    c. The drug caused harmful side effects that outweighed any potential utility;

    d. The drug was not accompanied by adequate labeling or instructions for use to
fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or
consumers of the drug, including Plaintiffs, of the potential risks and serious side effects
associated with its use;

    e. In light of the potential and actual risk of harm associated with the drug's use, a
reasonable person who had actual knowledge of this potential and actual risk of harm
would have concluded that Celebrex (Celecoxib) should not have been marketed in that
condition.

105. At all times the drug Celebrex (Celecoxib) was designed, tested, inspected,
manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised,
promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach,
users and/or consumers of the drug across the United States, including Plaintiffs, without
substantial change in the defective and unreasonably dangerous condition in which it was sold.

106. At all times, Plaintiffs used Celebrex (Celecoxib) for its intended or reasonably
foreseeable purpose.

107. As a direct, legal, proximate and producing result of the defective and unreasonably
dangerous condition of Celebrex (Celecoxib), Plaintiffs sustained substantial injuries including,
among other things, heart attack. These injuries caused extensive pain and suffering and severe
emotional distress and substantially reduced Plaintiffs's ability to enjoy life. In addition, the

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 33 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 33 of 44

defective and unreasonably dangerous condition of Celebrex (Celecoxib) caused Plaintiffs to

expend substantial sums of money for medical, hospital, and related care.

108. As a direct, legal, proximate and producing result of the defective and unreasonably

dangerous condition of Celebrex (Celecoxib), Plaintiffs were injured in health, strength and

activity and suffered physical injuries as well as mental anguish. All of said injuries caused

Plaintiffs intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury

and damages.

109. As a direct, legal, proximate and producing result of the defective and unreasonably

dangerous condition of Celebrex (Celecoxib), Plaintiffs required reasonable and necessary health

care treatment and service and had incurred expenses therefore.

110. By reason of the foregoing,Plaintiffs was damaged by the wanton and willful

recklessness of the Defendants, who will be liable to Plaintiffs. The amount sought herein

exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over

this matter.

## THIRD CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY FAILURE TO WARN

111. Plaintiffs repeats and realleges each of the allegations contained in this Complaint.

112. Celebrex (Celecoxib) was defective and unreasonably dangerous when it left the

possession of Defendants in that it contained warnings insufficient to alert the medical,

pharmaceutical and/or scientific communities, and users and/or consumers of the drug,

includingPlaintiffs, to the dangerous risks and reactions associated with Celebrex (Celecoxib)

when used for its intended or reasonably foreseeable purpose. Those dangerous risks and

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 34 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 34 of 44

reactions included, but were not limited to, heart attack, stroke, life threatening allergic and/or

skin reactions and/or death and other serious and life threatening side effects.

113. At all times, Plaintiffs used the drug for its intended or reasonably foreseeable

purpose.

114. Plaintiffs could not have discovered any defect in the drug through the exercise of

care.

115. Defendants, as manufacturers of a prescription drug, are held to the level of

knowledge of an expert in the field.

116. The warnings that were given by Defendants were not accurate or clear and/or were

ambiguous.

117. Defendants had a continuing duty to warn the medical, pharmaceutical and/or

scientific communities, and users and/or consumers of the drug, including Plaintiffs, of the

potential risks and serious side effects associated with the use of Celebrex (Celecoxib).

118. As a direct, legal, proximate and producing result of Defendant's failure to warn,

Plaintiffs sustained harm, including, among other things, heart attack. These injuries caused

extensive pain and suffering and severe emotional distress and substantially reduced Plaintiffs's

ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiffs to expend

substantial sums of money for medical, hospital, and related care.

119. As a direct, legal, proximate and producing result of Defendants' failure to warn,

Plaintiffs was injured in health, strength and activity and suffered physical injuries as well as

mental anguish. All of said injuries caused Plaintiffs intense anxiety, distress, fear, pain,

suffering and distress secondary to the physical injuries and damages.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 35 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 35 of 44    Page 35 of 44

120. As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiffs required reasonable and necessary health care treatment and services and had incurred expenses therefore.

121. By reason of the foregoing, Plaintiffs was damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiffs. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

FOURTH CAUSE OF ACTION

BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

122. Plaintiffs reallege all prior paragraphs of this complaint as if fully set out herein.

123. The Removing Defendants and Sales Representatives Defendants made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.

124. The Removing Defendants through their detail sales representatives, including Sales Representatives Defendants, made representations of the safety and efficacy of their product, Celebrex.

125. Celebrex does not conform to the express representations made through the Defendants' advertising and marketing efforts.

126. Celebrex does not conform to the express representations made by Sales Representatives Defendants.

127. Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiffs.

128. Wherefore, this Plaintiffs demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 36 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 36 of 44    Page 36 of 44

## FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

129. Plaintiffs repeat and reallege each of the allegations contained in the Complaint.

130. Defendant is a "merchant" as defined in *Mississippi Code Annotated Uniform Commercial Code* § 75-2-104.

131. Celebrex (Celecoxib) is a "good" as defined *Code Annotated Uniform Commercial Code* § 75-2-105.

132. At the time that Defendants designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Celebrex (Celecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Celebrex (Celecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

133. Plaintiffs, in ingesting Celebrex (Celecoxib), reasonably relied upon the skill and judgment of Defendants as to whether Celebrex (Celecoxib) was of merchantable quality and safe and fit for its intended, reasonably foreseeable and/or ordinary use.

134. In breach of the implied warranty given by Defendants, Celebrex (Celecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because the product was and is un-merchantable, in a defective condition and unreasonably dangerous and unfit for the intended, reasonably foreseeable and/or ordinary purpose for which it was intended as described above.

135. In breach of the implied warranty given by Defendants, Celebrex (Celecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because, among other things:

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 37 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 37 of 44    Page 37 of 44

a. Use of Celebrex (Celecoxib) carried a risk of, among other things, heart attack, stroke and/or death and other serious and life threatening side effects;

b. Defendants failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, includingPlaintiffs, of the potential risks and serious side effects of the drug;

c. Defendants failed to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the potential risks and serious side effects associated with the use of the drug.

136. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiffs sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiffs' ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiffs to expend substantial sums of money for medical, hospital and related care.

137. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiffs has been injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiffs intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

138. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiffs required reasonable and necessary health care treatment and services and had incurred expenses therefore.

139. As a result of Defendant's breach of warranty, Plaintiffs has suffered and will continue to suffer.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 38 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 38 of 44   Page 38 of 44

140. By reason of the foregoing, Plaintiffs has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiffs. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

SIXTH CAUSE OF ACTION

FRAUD

141. Plaintiffs repeat and reallege each of the allegations contained in the Complaint.

142. Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, the safety and efficacy of the drug and/or recklessly, knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, material, adverse information regarding the safety and efficacy of Celebrex (Celecoxib).

143. Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, with the intent that they reach users and/or consumers of the drug, including Plaintiffs.

144. Defendants either knew or should have known that the representations were false.

145. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, would rely on such in selecting Celebrex (Celecoxib) as a pain reliever.

146. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Celebrex (Celecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 39 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 39 of 44 39 of 44

147. Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs. Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, that:

a. There had been insufficient studies regarding the safety and efficacy of the drug;

b. The drug was fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of the drug;

c. Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious prothrombotic and allergic and/or skin reactions, including, but not limited to, adverse cardiovascular events and/or Stevens-Johnson Syndrome/toxic epidermal necrolysis;

d. Defendants knew or should have known of reports of increased heart attacks, allergic and/or skin reactions and/or strokes associated with the use of the drug;

e. Defendants knew or should have known of the greatly increased risk of developing heart attacks, allergic and/or skin reactions and/or strokes associated with use of Celebrex (Celecoxib); yet, despite this they were downplaying the risk of the drug.

148. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representatives, employees, distributors, agents and/or detail persons.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 40 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 40 of 44  Page 40 of 44

149. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and serious side effects associated with the use of Celebrex (Celecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, about the potential risks and serious side effects associated with the use of Celebrex (Celecoxib) in a timely manner, yet they failed to provide such warning.

150. Plaintiffs justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Celebrex (Celecoxib) to her detriment.

151. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiffs sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress for Plaintiffs, and substantially reduced Plaintiffs' ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiffs to expend substantial sums of money for medical, hospital, and related care.

152. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiffs have been injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiffs intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

153. As a result of Defendant's fraud, Plaintiffs have suffered and will continue to suffer.

154. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiffs required reasonable and necessary health care treatment and service and had incurred expenses therefore.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 41 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 41 of 44

155. By reason of the foregoing, Plaintiffs have been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiffs. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

SEVENTH CAUSE OF ACTION

NEGLIGENT MISREPRESENTATION

156. Plaintiffs repeat and reallege each of the allegations contained in the Complaint.

157. Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, the safety and efficacy of the drug and/or negligently concealed or failed to exercise reasonable care by concealing and failing to disclose to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, material, adverse information regarding the safety and efficacy of Celebrex (Celecoxib).

158. Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, with the intent that they reach users and/or consumers of the drug, including Plaintiffs.

159. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Celebrex (Celecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

160. Defendants either knew or should have known that the representations were false.

161. Defendants knew or should have known that the misrepresentations and/or omissions concerning the safety and efficacy of the drug would be relied upon by the medical,

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB   Document 1   Filed 01/11/2008   Page 42 of 44
Case 4:07-cv-00124-MPM-EMB   Document 1   Filed 08/01/2007   Page 42 of 44   Page 42 of 44

pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, in selecting Celebrex (Celecoxib) as a pain reliever.

162. Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs. Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, that:

a. There had been insufficient studies regarding the safety and efficacy of the drug;

b. The drug was fully and adequately tested, despite the fact that there had been insufficient or inadequate testing of the drug;

c. Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse cardiovascular events, allergic and/or skin reactions and strokes;

d. Defendants knew or should have known of reports of heart attacks associated with the use of the drug;

e. Defendants knew or should have known of the greatly increased risk of heart attacks, strokes, life threatening allergic and/or skin reactions and/or death and other serious and life threatening side effects associated with the drug; yet, despite this was downplaying the risks of the drug.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 43 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 43 of 44    Page 43 of 44

163. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by the Removing Defendants, their sales representatives, employees, distributors, agents and/or detail persons, including the Sales Representatives Defendants.

164. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and complications associated with Celebrex (Celecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, about the potential risks and serious side effects associated with the use of Celebrex (Celecoxib) in a timely manner, yet it failed to provide such warning.

165. Plaintiffs justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Celebrex (Celecoxib) to his detriment.

166. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiffs sustained harm, including, among other things, heart attack. These injuries have caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiffs s ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiffs to expend substantial sums of money for medical, hospital, and related care.

167. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiffs were injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiffs intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

Celebrex II
Cause No.:

Case 3:08-cv-00200-CRB    Document 1    Filed 01/11/2008    Page 44 of 44
Case 4:07-cv-00124-MPM-EMB    Document 1    Filed 08/01/2007    Page 44 of 44

168. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiffs required reasonable and necessary health care treatment and service and had incurred expenses therefore.

169. As a result of the misrepresentations of the Defendants, Plaintiffs have suffered and will continue to suffer.

170. By reason of the foregoing, Plaintiffs have been damaged by the wanton and willful recklessness of these Defendants who will be liable to Plaintiffs. The amount sought herein exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and that Plaintiffs have such other and further relief, both general and special, at law and in equity, to which she may be justly entitled under the facts and attending circumstances.

Respectfully Submitted,

BY: _____
Atty. Levi Boone, III

8/01/07

*OF COUNSEL:*

**BOONE LAW FIRM, P.A.**
401 WEST SUNFLOWER ROAD
P. O. BOX 1772
CLEVELAND, MS 38732-1772
TEL:   (662) 843-7946
FAX:   (662) 843-7950
EMAIL: LBOONE@BOONELAWFIRM.COM

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CLAIBORNE LEON COLLIER, SR., ET AL

**DEFENDANTS**

PFIZER, INC., ET AL

**(b)** County of Residence of First Listed Plaintiff   BOLIVAR
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

BOONE LAW FIRM, P.A. P. O. BOX 1772 CLEVELAND, MS 38732
662-843-7946

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government
  Plaintiff
- ☐ 3   Federal Question
  (U.S. Government Not a Party)
- ☐ 2   U.S. Government
  Defendant
- ☒ 4   Diversity
  (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☒ 365 Personal Injury – | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332
Brief description of cause:
PHARMACEUTICAL LIABILITY

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                   DOCKET NUMBER

DATE   08/01/2007

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## Northern District of Northern Mississippi,
## Greenville Division

### SUMMONS IN A CIVIL CASE

**CLAIBORNE LEON COLLIER, SR., ET AL**
**PLAINTIFFS**

**VS.**                                   CASE NUMBER: _4:07cv124-M-B_

**PFIZER, INC., ET AL**                   **DEFENDANTS**

TO:   Pharmacia Corporation
      Attention: Legal Department
      CT Corporation System
      645 Lakeland East Drive
      Jackson, Mississippi 39232

 YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

      Levi Boone, III, Esq.
      Boone Law Firm, P.A.
      401 W. Sunflower Road
      P.O. Box 1772
      Cleveland, MS 38732

an answer to the complaint which is served on you with this summons, within __30__ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

David Crews, Clerk of Court
_____          _8-2-07_____
CLERK                                     DATE

_Deer Dacus_
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
Northern District of Northern Mississippi,
Greenville Division

## SUMMONS IN A CIVIL CASE

**CLAIBORNE LEON COLLIER, SR., ET AL**
**PLAINTIFFS**

VS.                              CASE NUMBER: *4:07cv/24-m-B*

**PFIZER, INC., ET AL**                    **DEFENDANTS**

TO:    Monsanto, Inc.
       Attention: Legal Department
       Corporation Service Company
       506 South President Street
       Jackson, Mississippi 39201

     YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

       Levi Boone, III, Esq.
       Boone Law Firm, P.A.
       401 W. Sunflower Road
       P.O. Box 1772
       Cleveland, MS 38732

an answer to the complaint which is served on you with this summons, within  30 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

David Crews, Clerk of Court                    *8-2-07*
_____            _____
CLERK                                          DATE

_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### Northern District of Northern Mississippi,
### Greenville Division

## SUMMONS IN A CIVIL CASE

**CLAIBORNE LEON COLLIER, SR., ET AL**
**PLAINTIFFS**

**VS.**                                   CASE NUMBER 4:07 CV 124-M-B

**PFIZER, INC., ET AL**                     **DEFENDANTS**

TO:     Pfizer, Inc.
        Attention: Legal Department
        235 East 42nd Street Frnt.
        New York, New York 10017-5703

   YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

        Levi Boone, III, Esq.
        Boone Law Firm, P.A.
        401 W. Sunflower Road
        P.O. Box 1772
        Cleveland, MS 38732

an answer to the complaint which is served on you with this summons, within __30__ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

David Crews, Clerk of Court

_____          _8-2-07_____
CLERK                                     DATE

_____
(By) DEPUTY CLERK

A0 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
Northern District of Northern Mississippi,
Greenville Division

## SUMMONS IN A CIVIL CASE

**CLAIBORNE LEON COLLIER, SR., ET AL**
**PLAINTIFFS**

**VS.**                              CASE NUMBER: 4:07cv124-m-B

**PFIZER, INC., ET AL**                          **DEFENDANTS**

TO:    G. D. Searle LLC
       Attention: Legal Department
       CT Corporation System
       208 South LaSalle Street, Suite 814
       Chicago, Illinois 60604

   YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

       Levi Boone, III, Esq.
       Boone Law Firm, P.A.
       401 W. Sunflower Road
       P.O. Box 1772
       Cleveland, MS 38732

an answer to the complaint which is served on you with this summons, within  30  days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

~~David Crews, Clerk of Court~~
CLERK

_(By) DEPUTY CLERK_

8-2-07
DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### Northern District of Northern Mississippi,
### Greenville Division

## SUMMONS IN A CIVIL CASE

**CLAIBORNE LEON COLLIER, SR., ET AL**                    **PLAINTIFFS**

**VS.**                                        CASE NUMBER: <u>4:07CV124-M-B</u>

**PFIZER, INC., ET AL**                        **DEFENDANTS**

TO:    Monsanto, Inc.
       Attention:  Legal Department
       Corporation Service Company
       506 South President Street
       Jackson, MS 39201

    YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

       Levi Boone, III, Esq.
       Boone Law Firm, P.A.
       401 W. Sunflower Road
       P.O. Box 1772
       Cleveland, MS 38732

an answer to the complaint which is served on you with this summons, within ~~30~~ *20* days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**David Crews, Clerk of Court**

CLERK

_____     11-21-2007
(By) DEPUTY CLERK                            DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### Northern District of Northern Mississippi,
### Greenville Division

## SUMMONS IN A CIVIL CASE

**CLAIBORNE LEON COLLIER, SR., ET AL**                    **PLAINTIFFS**

**VS.**                                     CASE NUMBER: <u>4:07CV124-M-B</u>

**PFIZER, INC., ET AL**                         **DEFENDANTS**

TO:    G. D. Searle LLC
       5200 Old Orchard Road
       Skokie, IL 60077

   YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

          Levi Boone, III, Esq.
          Boone Law Firm, P.A.
          401 W. Sunflower Road
          P.O. Box 1772
          Cleveland, MS 38732

an answer to the complaint which is served on you with this summons, within 20̶0̶ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

   **David Crews, Clerk of Court**
_____                    <u>11-21-2007</u>
CLERK                                               DATE

*R Moore*
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## Northern District of Northern Mississippi,
## Greenville Division

## SUMMONS IN A CIVIL CASE

**CLAIBORNE LEON COLLIER, SR., ET AL**                    **PLAINTIFFS**

**VS.**                                    CASE NUMBER: <u>4:07CV124-M-B</u>

**PFIZER, INC., ET AL**                    **DEFENDANTS**

TO:   Pharmacia Corporation
      Attention: Legal Department
      C. T. Corporation System
      645 Lakeland East Drive
      Jackson, MS 39232

    YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

       Levi Boone, III, Esq.
       Boone Law Firm, P.A.
       401 W. Sunflower Road
       P.O. Box 1772
       Cleveland, MS 38732

an answer to the complaint which is served on you with this summons, within ~~30~~ 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**David Crews, Clerk of Court**

_____          _11-21-2007_

CLERK                                    DATE

_X Moore_

(By) DEPUTY CLERK

A CERTIFIED TRUE COPY

JAN 3 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**DEC 1 4 2007**

FILED
CLERK'S OFFICE

F I L E D

JAN 10 2008

DAVID CHEWS, CLERK
by _____ Deputy

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**

MDL No. 1699

(SEE ATTACHED SCHEDULE)

**CONDITIONAL TRANSFER ORDER (CTO-91)**

On September 6, 2005, the Panel transferred 30 civil actions to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 391 F.Supp.2d 1377 (J.P.M.L. 2005). Since that time, 1,164 additional actions have been transferred to the Northern District of California. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Breyer.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Northern District of California and assigned to Judge Breyer.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of September 6, 2005, and, with the consent of that court, assigned to the Honorable Charles R. Breyer.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

Inasmuch as no objection is
pending at this time, the
stay is lifted.

**JAN - 3 2008**

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By_____ Deputy Clerk
Date _1-7-08_

IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION          MDL No. 1699

## SCHEDULE CTO-91 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

FLORIDA MIDDLE
   FLM 8  07-2011          Vincent Rosenquist, et al. v. Pfizer Inc.

MARYLAND
   MD  1  07-3130          Alex Bondarenko v. Pfizer Inc.
   MD  1  07-3131          Melvin Brown v. Pfizer Inc.
   MD  1  07-3133          Theodore Carter v. Pfizer Inc.
   MD  1  07-3134          Hobert Church, Jr. v. Pfizer Inc.
   MD  1  07-3135          Gary Cox v. Pfizer Inc.
   MD  1  07-3136          Raymond Deigert v. Pfizer Inc.
   MD  1  07-3137          Dana Johnson v. Pfizer Inc.
   MD  1  07-3138          Ruth Logan v. Pfizer Inc.
   MD  1  07-3139          Nora Manning v. Pfizer Inc.
   MD  1  07-3140          Esther Nimarko v. Pfizer Inc.
   MD  1  07-3141          Carolyn Owens v. Pfizer Inc.
   MD  1  07-3142          George Sherain, II v. Pfizer Inc.
   MD  1  07-3143          Inetta Wood v. Pfizer Inc.

MINNESOTA
   MN  0  07-4634          Vivian Cobb v. Pfizer Inc., et al.
   MN  0  07-4661          Gene Summers v. Pfizer Inc., et al.
   MN  0  07-4662          Ed Narke v. Pfizer Inc., et al.
   MN  0  07-4670          Charlotte Allen, et al., Pfizer Inc., et al.
   MN  0  07-4671          Joann Burkeen, et al. v. Pfizer Inc., et al.

MISSISSIPPI NORTHERN
   MSN 4  07-124           Claiborne Leon Collier, Sr., et al. v. Pfizer Inc., et al.

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION**

MDL No. 1699

## INVOLVED COUNSEL LIST (CTO-91)

Levi Boone, III
BOONE LAW FIRM
401 West Sunflower Road
P.O. Box 1772
Cleveland, MS 38732-1772

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN
& BERNSTEIN LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA 94111-3339

Elizabeth L. Dudley
HUTTON & HUTTON LAW FIRM LLC
8100 East 22nd Street
North Building 1200
P.O. Box 638
Wichita, KS 67201-0638

Edward W. Gerecke
CARLTON FIELDS PA
4221 W. Boy Scott Boulevard
Suite 100
P.O. Box 3239
Tampa, FL 33601-3239

Walter T. Johnson
WATKINS & EAGER
P.O. Box 650
Jackson, MS 39205-0650

Gregory A. Markel
CADWALADER WICKERSHAM
& TAFT LLP
One World Financial Center
New York, NY 10281

Ted G. Meadows
BEASLEY ALLEN CROW METHVIN
PORTIS & MILES PC
P.O. Box 4160
Montgomery, AL 36103-4160

Lynn M. Sasso
FERRARO LAW FIRM PA
4000 Ponce De Leon Blvd.
Suite 700
Miami, FL 33146

Amy W. Schulman
DLA PIPER US LLP
1251 Avenues of the Americas
27th Floor
New York, NY 10020-1104

Paul A. Weykamp
LAW OFFICES OF PAUL A WEYKAMP
16 Stenersen Lane
Suite 2
Hunt Valley, MD 21030

Martha K. Wivell
P.O. Box 339
Cook, MN 55723

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**          MDL No. 1699

## INVOLVED JUDGES LIST (CTO-91)

Hon. James S. Moody, Jr.
U.S. District Judge
13A Sam M. Gibbons U.S. Courthouse
801 North Florida Avenue
Tampa, FL 33602

Hon. Richard D. Bennett
U.S. District Judge
5D Edward A. Garmatz Federal Bldg.
& U.S. Courthouse
101 West Lombard Street
Baltimore, MD 21201-2605

Hon. Andre M. Davis
U.S. District Judge
5B Edward A. Garmatz Federal Building
& U.S. Courthouse
101 West Lombard Street
Baltimore, MD 21201-2615

Hon. Benson Everett Legg
Chief Judge, U.S. District Court
7A Edward A. Garmatz Federal Building
& U.S. Courthouse
101 West Lombard Street
Baltimore, MD 21201-2605

Hon. J. Frederick Motz
U.S. District Judge
101 West Lombard Street
510 Edward A. Garmatz Federal Building
& U.S. Courthouse
Baltimore, MD 21201-2690

Hon. William D. Quarles, Jr.
United States District Judge
3A Edward A. Garmatz Fed. Bldg.
& U.S. Courthouse
101 West Lombard Street
Baltimore, MD 21201-2605

Hon. Michael James Davis
U.S. District Judge
14E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Hon. Donovan W. Frank
U.S. District Judge
738 Warren E. Burger Federal Bldg.
316 North Robert Street
St. Paul, MN 55101

Hon. Paul A. Magnuson
Senior U.S. District Judge
730 Warren E. Burger Federal Building
316 North Robert Street
St. Paul, MN 55101

Hon. James M. Rosenbaum
Chief Judge, U.S. District Court
15E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Hon. Michael P. Mills
Chief Judge, U.S. District Court
335 Federal Bldg. & U.S. Courthouse
911 Jackson Avenue, West
Oxford, MS 38655

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**                    MDL No. 1699

### INVOLVED CLERKS LIST (CTO-91)

Sheryl L. Loesch, Clerk
218 Sam M. Gibbons U.S. Courthouse
801 North Florida Avenue
Tampa, FL 33602-3800

Felicia C. Cannon, Clerk
Edward A. Garmatz Federal
Building & U.S. Courthouse
101 W. Lombard Street
Baltimore, MD 21201-2690

Richard Sletten, Clerk
202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

David Crews, Clerk
U.S. District Court
305 Main Street
Room 329
Greenville, MS 38701

CLOSED, JURY

# U.S. District Court
# Northern District of Mississippi (Greenville Division)
# CIVIL DOCKET FOR CASE #: 4:07-cv-00124-MPM-EMB
# Internal Use Only

Collier et al v. Pfizer, Inc. et al
Assigned to: Michael P. Mills
Referred to: Eugene M. Bogen
Cause: 28:1332 Diversity-Product Liability

Date Filed: 08/01/2007
Date Terminated: 01/10/2008
Jury Demand: Plaintiff
Nature of Suit: 365 Personal
Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Claiborne Leon Collier, Sr.**          represented by     **Levi Boone, III**
BOONE LAW FIRM
P. O. Box 1772
Cleveland, MS 38732-1772
(662) 843-7946
Email:
lboone@boonelawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Mary Conner**          represented by     **Levi Boone, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Margie L. Gilbert**          represented by     **Levi Boone, III**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Estate of L.G. Green**          represented by    **Levi Boone, III**
*by Stella Hampton, Personal*                      (See above for address)
*Representative*                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE*
                                                   *NOTICED*

**Plaintiff**

**Charlie L. Harris**             represented by    **Levi Boone, III**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE*
                                                   *NOTICED*

**Plaintiff**

**Hattie Holman**                 represented by    **Levi Boone, III**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE*
                                                   *NOTICED*

**Plaintiff**

**Alfred A. Kemp, Jr.**           represented by    **Levi Boone, III**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE*
                                                   *NOTICED*

**Plaintiff**

**Evelyn Koch**                   represented by    **Levi Boone, III**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE*
                                                   *NOTICED*

**Plaintiff**

**Rosie L. Lance**           represented by  **Levi Boone, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Estate of William Latham**     represented by  **Levi Boone, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Estate of Willie Jean Latham**     represented by  **Levi Boone, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Bessie Love**           represented by  **Levi Boone, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Alberta Martin**          represented by  **Levi Boone, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Samuel McIntee**          represented by  **Levi Boone, III**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE*
*NOTICED*

**Plaintiff**

**Auburn Medders**              represented by **Levi Boone, III**
                                (See above for address)
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE*
                                *NOTICED*

**Plaintiff**

**Paul Minchew**                represented by **Levi Boone, III**
                                (See above for address)
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE*
                                *NOTICED*

**Plaintiff**

**Annie Perry**                 represented by **Levi Boone, III**
                                (See above for address)
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE*
                                *NOTICED*

V.

**Defendant**

**Pfizer, Inc.**                represented by **Walter T. Johnson**
                                WATKINS & EAGER
                                P. O. Box 650
                                Jackson, MS 39205-0650
                                (601) 948-6470
                                Email:
                                wjohnson@watkinseager.com

                                *LEAD ATTORNEY*

**Defendant**

**Monsanto Company**

**Defendant**

**G.D. Searle, LLC**    represented by  **Walter T. Johnson**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**Pharmacia Corporation**    represented by  **Walter T. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2007 | ●1 | COMPLAINT against all defendants, Filing fee received $ 350, filed by Charlie L. Harris, Hattie Holman, Alfred A. Kemp, Jr, Evelyn Koch, Rosie L. Lance, Estate of William Latham, Estate of Willie Jean Latham, Bessie Love, Alberta Martin, Samuel McIntee, Claiborne Leon Collier, Sr, Auburn Medders, Paul Minchew, Annie Perry, Mary Conner, Margie L. Gilbert, Estate of L.G. Green. (Attachments: # 1 Civil Cover Sheet) (dmd, USDC) (Entered: 08/02/2007) |
| 08/01/2007 | ●2 | NOTICE OF ASSIGNMENT. Case assigned to Judge Michael P. Mills and Magistrate Judge Eugene M. Bogen. (dmd, USDC) (Entered: 08/02/2007) |
| 08/02/2007 | ●3 | Summons Issued as to Pfizer, Inc., Monsanto Company, G.D. Searle, LLC, Pharmacia Corporation. (dmd, USDC) |
| 08/03/2007 | ● | (Court only) ***Set Flags (JURY) (nsm, USDC) |
| 08/06/2007 | ● | Filing fee: $ 350.00, receipt number 86914 (kmt, USDC) |

| | | |
|---|---|---|
| 11/21/2007 | 4 | Summons Reissued as to Monsanto Company, G.D. Searle, LLC, and Pharmacia Corporation. (rcm) |
| 12/06/2007 | 5 | ANSWER to Complaint by Pfizer, Inc., G.D. Searle, LLC, Pharmacia Corporation. (Johnson, Walter) |
| 12/06/2007 | 6 | NOTICE OF SERVICE of Corporate Disclosure Statement by Walter T. Johnson on behalf of Pfizer, Inc., G.D. Searle, LLC, Pharmacia Corporation to Plaintiffs. (Johnson, Walter) |
| 12/07/2007 | | NOTICE OF CORRECTION: Atty contacted and asked to re-file actual corporate statement re 6 Notice of Service (tab, USDC) |
| 12/11/2007 | 7 | CORPORATE STATEMENT *for Defendants Pfizer Inc., Pharmacia Corporation and G.D. Searle LLC*. (Johnson, Walter) |
| 01/07/2008 | 8 | Copy of Conditional Transfer Order to ND/CA for MDL Litigation # 1699. Order does not become effective until filed in ND/CA. (dmd, USDC) |
| 01/10/2008 | 9 | Received Transfer Order before the Judicial Panel on Multidistrict Litigation transferring case to Northern District of California (kmt, USDC) |
| 01/10/2008 | | Case Transferred to Northern District of California. Original file including transfer order and docket sheet forwarded to ND/CA electronically. CASE CLOSED. (kmt, USDC) |